CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS 2017 FEB 10 PH 4: 41
FORT WORTH DIVISION

DEPUTY CLERK

| | | |
|---|---|---|
| ALEXANDER PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00052-O-BL |
| | § | |
| NANCY A. BERRYHILL[1], | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alexander Perez seeks judicial review of the decision of the Commissioner of Social Security, who denied his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not unanimously consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends the Commissioner's decision be reversed and remanded for further proceedings.

### I. STATEMENT OF THE CASE

Perez filed an application for DIB and SSI on December 4, 2012. Those applications were denied initially on March 22, 2013 and after reconsideration on June 28, 2013. Perez requested a hearing, which was held before an Administrative Law Judge on July 2, 2014. The ALJ issued a decision on October 15, 2014 finding Perez not disabled.

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

Specifically, the ALJ found during step one that Perez had not engaged in substantial gainful activity since May 13, 2009. (Doc. 12-3, 14). At step two, the ALJ determined Perez had the severe impairments of back impairment status post-transforaminal lumbar interbody fusion surgery, fibromyalgia, obesity, and major depressive disorder. *Id.* In the third step, the ALJ found those severe impairments did not meet and were not equivalent to any listed impairments. (Doc. 12-3, 15). The step three analysis continued, with the ALJ finding Perez retained the residual functional capacity to perform sedentary work so long as it was unskilled. (Doc. 12-3, 17). At step four, the ALJ concluded Perez was unable to perform any past relevant work, and at step five ruled the Administration met its burden of proving there were sufficient jobs Perez was capable of performing by determining the Medical-Vocational Guidelines directed a finding of not disabled. (Doc. 12-3, 21).

Perez applied to the Appeals Council, which denied review on December 18, 2015. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to his pleadings, testimony at the administrative hearing, and the administrative record, Perez was 40 years old and living alone at the time of the administrative hearing. He has experience working in truck driving and delivery, among other jobs. He complains of physical ailments including back pain, muscle spasms, and fibromyalgia, as well as depression, and alleges these physical and mental ailments render him disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes

'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Perez raises three issues on appeal. He claims his condition meets the listing requirements for disorders of the spine, the ALJ improperly rejected the medical opinions of treating and examining physicians, and that the ALJ's application of the Medical-Vocational Guidelines to his case was improper.

### A. Appendix Listing 1.04

If an ALJ finds a severe impairment meeting the durational requirement at step two, then the ALJ must determine whether those impairments meet or are equivalent to an impairment listed in the regulations. 20 C.F.R. § 404.1520. Perez claims that the ALJ made an error in finding at step three that his impairments did not meet or equal an impairment listed in Appendix 1, specifically that of disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. The relevant portion of the listing from the appendix reads:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root … or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)….

*Id.* "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis original). Furthermore, the claimant must show the impairment met the severity required by the listing for a period of at least twelve months. *See Barnhart v. Walton*, 535 U.S. 212, 218 (2002). Perez does not argue the ALJ applied incorrect legal standards but rather that the ALJ's determination that his impairments did not meet the listing requirements is unsupported by substantial evidence. (Doc. 15, 5). So, Perez's burden is to show that no reasonable person could review the evidence and believe he did not meet all of the listing requirements for a twelve-month period. *Hardman*, 820 F.3d at 147.

Perez points to record evidence supplied by Dr. Meiches of disc herniation which extends "where it contacts and could impinge … the left S1 nerve root" as proof he meets the listing requirements. (Doc. 15, 6-7). However, the actual language from Dr. Meiches states that the herniation "extends into the left lateral recess where it contacts and conceivably could impinge upon the left S1 nerve root." (Doc. 12-8, 23). Dr. Meiches states later in the same report that "the disc herniation … at least contacts the left S1 nerve root, though the nerve root is not definitely displaced." *Id.* Perez asserts in his reply brief that the necessary compromise is demonstrated by the evidence, but again characterizes the

same evidence from Dr. Meiches as definitively indicating a compromise. (Doc. 17, 2 – "Nerve root compromise is established by the MRI").

The question is whether the potential impingement described by Dr. Meiches' choice of words so clearly qualifies as a compromise for the required twelve-month period that no reasonable person could find the nerve root was not compromised. A viable reading of listing 1.04 is that compromise of a nerve root is indicated by the criteria of subpart A, including motor loss. The ALJ determined that Perez did not meet listing 1.04 because "the evidence of record does not support a finding that the claimant has motor loss ...." (Doc. 12-3, 16). Although Perez cites some record evidence that his range of motion was limited at some points, the Commissioner likewise refers to evidence that repeatedly refers to him as having a normal gait and range of motion. (Docs. 15, 7; 16, 7). Any conflict in the record evidence is the Commissioner's purview, and the role of the court is not to reweigh that evidence. *Masterson*, 309 F.3d at 272. Given the conflicting evidence, a determination that Perez did not meet the requirements of listing 1.04 is not objectively unreasonable, and so Perez has failed to show the ALJ's determination on this point is unsupported by substantial evidence.

### B. Consideration of Medical Opinions

Perez next argues the ALJ did not properly consider the opinions of some of his treating and examining physicians, as well as the opinions of a state agency medical consultant. Perez cites serially to numerous opinions and results of tests that he claims indicate he is unable to work because of pain. (Doc. 15, 8-9). To the extent these opinions assess limitations that should be addressed in an RFC, they are discussed below. However, where they are mere euphemism for disability, any argument they were not considered by the ALJ is misguided, as disability is an

ultimate issue reserved to the Commissioner. *See Newton*, 209 F.3d at 448 ("the ALJ has sole responsibility for determining a claimant's disability status" quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Medical sources assess claimants with limitations, but are not entitled to decide a claimant is unable to work.[2]

In assessing limitations and supplying medical opinions, the opinion of an acceptable medical source is given great weight. *Newton*, 209 F.3d at 453. "Acceptable medical source refers to one of the sources described in [20 C.F.R.] § 404.1513(a) who provides evidence about [the claimant's] impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. § 404.1502. A "treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (internal quotation omitted).

Perez complains the ALJ did not perform "a full and thorough evaluation of the opinion" of Dr. Van Hal, his orthopedic specialist. (Doc. 15, 9). He specifically cites Dr. Van Hal's opinion that "regarding [Perez's] work situation he has been basically off because of chronic pain issues and I do not see that actually changing. I do not think he is productive. I think he would be a significant liability not only to himself but to an employer given the current situation." (Doc. 12-8, 76). Perez appears to assert this opinion is based on an evaluation performed 23 months earlier – and prepared for a different physician – which assessed him with an inability to sit or stand for prolonged periods and an inability to work for 40 hours a week

---

[2] As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). These regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* §§ 404.1527(d), 416.927(d).

without pain. (Doc. 15, 8 citing Doc. 13, 20-21). Assuming *arguendo* that Dr. Van Hal's reference to "the current situation" was an oblique incorporation of these limitations, the ALJ is required to assess whether they are disabling and is not required to give Dr. Van Hal's opinion on the ultimate issue of Perez's ability to work at all significant deference. *Paul*, 29 F.3d at 211. Perez does not argue that the ALJ insufficiently considered his inability to sit or stand or work without pain when crafting the RFC, but rather that Dr. Van Hal's opinions were improperly dismissed as inconsistent with other record evidence. (Doc. 15, 9).

The only coherent reading of Perez's argument regarding the opinion of Dr. Van Hal is that the ALJ is required to detail point-by-point why he believes it is not persuasive as to Perez's overall inability to work. This is an improper shifting of the burden, as the claimant bears the burden of showing he is disabled[3], and a cursory assessment by a physician – treating or otherwise – that he is unable to work does not satisfy that burden. *Audler*, 501 F.3d at 448; *Newton*, 209 F.3d at 448. Perez has not shown that Dr. Van Hal's opinion was not sufficiently considered by the ALJ, only that the ALJ and Dr. Van Hal reached different conclusions about his ability to work at all.

Perez also alleges the ALJ failed to properly consider his limitations in specific functional abilities assessed by Dr. Ghai, a state agency medical consultant. (Doc. 15, 10). Perez does not state which limitations assessed by Dr. Ghai should have caused the ALJ to make a different determination at any step, instead summarizing Dr. Ghai's determinations and implying they must have been rejected if he was determined not to be disabled. (Doc. 15, 10-11). The ALJ's decision states that he gave some weight to Dr. Ghai's opinions in limiting Perez to unskilled work, but believed the evidence indicated that treatment for depression which began

---

[3] Except that the Commissioner bears the burden of showing at step five that there are a sufficient number of jobs the claimant is capable of performing. *Audler*, 501 F.3d at 448.

subsequent to Dr. Ghai's opinion ameliorated the limitations she had assessed to activities of daily living and social function. (Doc. 12-3, 21). The RFC assessed by the ALJ incorporated the limitations assessed by Dr. Ghai except where they conflicted with other record evidence, and the role of resolving conflicts in the evidence is performed by the Commissioner, and not the courts. (Doc. 12-3, 17; *Newton*, 209 F.3d at 452). Perez has not shown that any medical opinions were improperly considered under the applicable legal standards or that the ALJ's determinations are unsupported by substantial evidence.

### C. Medical-Vocational Guidelines

Perez finally argues the ALJ improperly relied upon the medical-vocational guidelines – "the Grids" – in determining he is not disabled and instead should have called a vocational expert to testify as to whether jobs he is capable of performing exist. (Doc. 15, 12). To establish that there is work a claimant can perform, at step five the ALJ relies on a vocational expert's response to a hypothetical question, or alternatively on the Grids. *Newton*, 209 F.3d at 458; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008).

Perez asserts the assessment of a severe nonexertional impairment – in this case, major depressive disorder – precludes the ALJ from relying solely on the Grids in determining a claimant is not disabled. (Doc. 15, 13). When "the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Newton*, 209 F.3d at 458 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The ALJ assessed Perez with an RFC for sedentary work, and further limited his capacity to work by determining "[h]is depression in conjunction with his continued pain makes it appropriate to limit the claimant to unskilled work." (Doc. 12-3, 21).

The Commissioner argues that Perez's nonexertional limitations do not significantly affect his RFC and so exclusive reliance on the Grid to determine there are jobs Perez can perform is appropriate. (Doc. 16, 18).

However, this is an internally inconsistent position: at step three, the ALJ assessed Perez with the RFC to perform only a subset of the full range of sedentary work, and the Commissioner argues at step five the ALJ determined Perez was capable of the full range of sedentary work. (Docs. 12-3, 17; 16, 18). If Perez is not capable of the full range of sedentary work, then a determination there are jobs he is capable of performing without a more individualized determination than reliance on the Grids is insufficient. *Bowling*, 36 F.3d at 435 ("[T]he Secretary did not meet her burden of proof because the ALJ found that [the claimant] was not capable of performing a full range of any particular category of work[.]"); *see Jones v. Colvin*, 2016 WL 5085972 at *9 (N.D. Tex. Sep. 20, 2016) (When "nonexertional limitations were severe and then [the ALJ] based his step five findings based solely on the Grids ... [b]ecause the ALJ did not rely on VE testimony or other similar evidence in making his step five determination that Plaintiff could perform other work in the national economy, his decision was not based on substantial evidence."); *see also Hearne v. Barnhart*, 111 Fed.Appx. 256, 257-58 (5th Cir. 2004). Without testimony from a VE, or other individualized determination that there are sufficient number of unskilled and sedentary jobs Perez is capable of performing, the ALJ's step five determination is unsupported by substantial evidence.

## V. CONCLUSION

As the Commissioner failed to meet the step five burden of showing Perez is capable of other work, the ALJ's determination he is not disabled is unsupported by substantial evidence. Considering the above, it is **RECOMMENDED** the decision of the Commissioner be **REVERSED** and Perez's case **REMANDED** to the Social Security Administration for further proceedings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February <u>  /0  </u>, 2017.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**